# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5450 | **DATE** | 8/28/2002 |
| **CASE TITLE** | USA/ ex rel. JESSE SMITH vs. KENNETH R. BRILEY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Jesse Smith's amended petition for writ of habeas corpus is dismissed as untimely.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 0 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 50 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ex rel. JESSE SMITH, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> KENNETH R. BRILEY, ) <br> ) <br> Respondent. ) <br> ) | Case No. 98 C 5450 <br><br> The Honorable John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on prisoner Jesse Smith's ("Smith") Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 against Kenneth R. Briley[1], Warden of Stateville Correctional Center in Joliet, Illinois, where Smith is in custody. For the following reasons, Smith's petition is dismissed.

## BACKGROUND

Following a bench trial in the Circuit Court of Cook County, Smith and a co-defendant, Willie Barnes ("Barnes"), were convicted of first-degree murder and three counts of attempted murder on August 31, 1992. Smith was sentenced to an extended term of eighty years of imprisonment for the first-degree murder conviction and concurrent terms of thirty years' imprisonment for the attempted murder convictions.

At the trial, a single witness, Jerome Wilson ("Wilson"), identified Smith and Barnes as the

---

[1]Kenneth R. Briley, the present custodian, is substituted as the proper named Respondent pursuant to Rule 2(a) of the Rules Governing Section 2254 in the United States District Courts.



shooters. Wilson testified that a little after midnight on February 2, 1991, he and the murder victim had left his apartment at 4525 South Federal to go to the victim's mother's house. *People v. Barnes*, No. 91 CR 11754, slip op. at 2 (Ill. App. Ct. 1995). "As they walked toward Federal Street, a tall, light-skinned, 25 year-old black man, with a wide nose, protruding lips, and a mustache, wearing all black clothing and a hood[,] approached" them. *Id.* This encounter took place in the breezeway, and Wilson testified that there was "a lot of light" in the breezeway. *Id.* Wilson testified that the man's face was not covered by the hood and identified Smith as this man. *Id.* at 3. Wilson further testified that Smith stopped at about thirteen feet away from Wilson and the victim; and then, with his hand in his pocket so that the gun was not visible, shot the victim in the head. *Id.* After Wilson spoke to Smith, Smith removed his hood, took the gun out of his pocket, and shot Wilson in the left side. *Id.* On February 3, 1991, police officers visited Wilson in the hospital, and Wilson identified Smith from a photograph. *Id.* at 4. Wilson also identified Smith as the man who shot him and the victim in a photo array two days after the shooting, a lineup twenty-three days after the shooting, and in court. *Id.* at 6, 8. Although Smith's trial counsel, Lawrence Vance, alluded to an alibi witness in his opening statement, Vance never called such a witness. (Pet.'s Argument Supp. Remanding New Trial, Ex. D at A-28.)

Smith then appealed his conviction and sentence to the Illinois Appellate Court, First District, arguing: (1) that he was not proven guilty beyond a reasonable doubt and (2) that his sentence was excessive. On June 30, 1995, the Appellate Court affirmed Smith's conviction and sentence. *Barnes*, No. 91 CR 11754, slip op. at 1. Smith then filed a petition for leave to appeal the conviction and sentence to the Illinois Supreme Court, raising the same issues. On October 5, 1995, the Illinois Supreme Court denied Smith's petition for leave to appeal his conviction and sentence.

On January 8, 1996, Smith filed a *pro se* Petition for Post-Conviction Relief in the Circuit Court of Cook County. In this petition, Smith contended that his rights to due process of law, equal protection of the law, effective assistance of counsel, and a fair trial were violated when: (1) his trial counsel failed to present an alibi defense, (2) his trial counsel failed to file a motion to suppress, (3) the state knowingly presented perjured testimony, (4) Petitioner was coerced by his trial counsel not to testify, (5) the trial court "showed prejudice" when discussing Petitioner's right to testify, and (6) his counsel on appeal failed to present all relevant issues to the Appellate Court. The Circuit Court of Cook County denied this petition in a one-line order without an evidentiary hearing on March 28, 1996. (Resp. Ex. D).

Smith's counsel for his first appeal then moved for leave to withdraw as counsel after concluding that Smith's petition was untimely and did not "set forth the gist of a constitutional claim." The Appellate Court granted counsel's Motion to Withdraw and affirmed the Order of the Circuit Court denying Smith's petition. *People v. Smith*, No. 1-96-1638 (Ill.App.Ct. 1996). On January 12, 1996, Smith then filed a petition for leave to appeal the denial of post-conviction relief to the Illinois Supreme Court, which was denied without opinion by the Illinois Supreme Court on October 1, 1997. In Smith's Petition for Leave to Appeal, he stated that he was "denied a full and fair opportunity to litigate his claims," arguing that his rights were violated when his appointed counsel failed to amend his *pro se* post-conviction petition. He further argued that his rights were violated when he was not allowed to spend as much time in the prison library as he wanted due to prison lockdown.

On August 28, 1998, Smith filed a *pro se* Petition for Writ of Habeas Corpus in the United States District Court for the Northern District of Illinois. This petition asserted three grounds for

relief: two claims of ineffectiveness of counsel and one Fourteenth Amendment claim for insufficient access to the prison library. In a minute order dated November 25, 1998, the judge previously assigned to this case found that Smith's petition was timely. On July 27, 1999, the previous judge ordered the State and Smith to file copies of Smith's petition to the Illinois Supreme Court appealing the denial of post-conviction relief. That order noted that district courts are precluded from considering claims that prisoners have not appealed to the Illinois Supreme Court citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). On August 11, 1999, that judge held that Petitioner had not waived the claims of ineffective assistance of counsel and the existence of the alibi defense by failing to include them in his petition to the Illinois Supreme Court. This minute order of August 11, 1999 stated:

> I have received a copy of petitioner's petition [for leave to appeal the denial of post-conviction relief] to the Illinois Supreme Court. It does raise the issue of adequacy of representation as well as the petitioner's alibi defense. Thus, petitioner has not waived the constitutional claims of ineffectiveness of counsel raised in his petition for habeas corpus. Accordingly, Federal Defender Program is appointed to represent the petitioner on these claims.

The case was then reassigned to this Court by an order of the Executive Committee dated September 5, 2000. With the assistance of court-appointed counsel, Smith filed an Amended Petition for a Writ of Habeas Corpus on June 12, 2001. This amended petition made three claims: (1) Petitioner's trial counsel was ineffective for failing to call an alibi witness and present an alibi defense, (2) Petitioner's appellate counsel was ineffective for failing to raise his ineffectiveness of trial counsel claim on appeal, and (3) the Circuit Court of Cook County erred when it denied Smith's Petition for Post-Conviction Relief without holding a hearing.

In a Memorandum Opinion and Order dated August 14, 2001, this Court granted Smith an

evidentiary hearing regarding his ineffective assistance of counsel claims. Respondent filed a renewed motion for reconsideration, raising the issues that the petition for writ of habeas corpus was untimely and/or procedurally barred. That motion was denied without prejudice with leave to assert those grounds at a later time. Respondent now reasserts those grounds.

An evidentiary hearing regarding Smith's ineffective assistance of counsel claims was held on May 1, 2002. At the evidentiary hearing, Carol Brown gave the following testimony. In February 1991, she had a relationship with Smith in which one child had been born. Ms. Brown discussed with Vance that she would be called as a defense witness at trial. She also told Vance that Smith was with her on the night of the crimes. Ms. Brown was present at the trial, but Vance told her that she did not need to testify. Vance offered no reason for not calling her as a defense witness. If Ms. Brown had been called at trial, she would have testified that, at the time of the crimes, Smith was at home with her and her two children.

Counsel for Smith intended to call Vance as a witness. However, Vance did not appear at the evidentiary hearing before this Court. The parties stipulated that Vance would have testified that: (1) he is an attorney at law, (2) he represented Smith throughout the trial for the offense of murder, (3) Carol Brown was not called to testify on behalf of Smith, and (4) he does not remember why he did not call Ms. Brown as a witness.

The parties were directed to submit written briefs in support of and against the Petition for a Writ of Habeas Corpus.

## LEGAL STANDARD

A federal court will not grant habeas corpus relief on any claim adjudicated on the merits by a state court unless: (1) the state court applied a United States Supreme Court doctrine unreasonably

-5-

to the facts of the case or (2) the state court's decision relied on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (2002). For relief based on an unreasonable application of Supreme Court doctrine, the state court's decision must be both incorrect and unreasonable. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

Petitioner must satisfy two requirements to avoid procedural default before a court may reach the merits of his habeas corpus petition: (1) exhaustion of state remedies and (2) fair presentment of any federal claims. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000)(citations omitted). A habeas corpus petitioner exhausts all state remedies when (1) he presents his claims to the highest court for a ruling on the merits or (2) state remedies are no longer available to the petitioner at the time his federal habeas petition is filed. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991)(citations omitted). "For a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). "If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted." *Rodriguez*, 193 F.3d at 917 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

## ANALYSIS

Respondent argues that Smith's petition is untimely because the statute of limitations on that petition had run under 28 U.S.C. § 2244(d)(1) (2002). Smith's habeas petition was filed on August 31, 1998, more than seven months after a year from the Illinois Supreme Court's denial of Smith's petition for leave to appeal his conviction and sentence on October 5, 1995. Respondent also argues that Smith's post-conviction petition did not toll the statute of limitations under § 2244(d)(2) because Smith's post-conviction petition was untimely.

Section 2244(d)(1) provides that:

> A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d)(1)(A). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

"[A]n application is pending as long as the ordinary state collateral review process is 'in continuance' – *i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey v. Saffold*, – – U.S. – – , 122 S. Ct. 2134, 2138 (2002).

> [A]n application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . . But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar.

*Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (internal citations and footnote omitted); *see also Smith v. Walls*, 276 F.3d 340, 344 (7th Cir. 2002) (holding that a successive post-conviction petition that is later dismissed as procedurally barred is "properly filed" if it complies with the State's formal filing requirements).

The Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1(a) (2002), provides for proceedings for imprisoned persons who assert that there was a substantial denial of their rights under the United States or Illinois constitutions, or both, in the proceedings that resulted in their

-7-

convictions. The Post-Conviction Hearing Act also provides that such actions shall not be commenced

> more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner, *unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.*

§ 5/122-1(c) (emphasis added).

The Illinois Supreme Court denied Smith's petition for leave to appeal his conviction and sentence on October 5, 1995. Smith was convicted on December 14, 1992. Under § 5/122-1(c), Smith had until the earlier of three years from December 14, 1992 or six months after his petition for leave to appeal was denied on October 5, 1995 to file his petition for post conviction relief. The earlier of the two is December 14, 1995, three years from his conviction. Smith filed a petition for post-conviction relief on January 12, 1996.

Smith argued to the trial court that the delay in filing his petition for post-conviction relief was not due to his own culpable negligence but to a lockdown at the prison where he was incarcerated during November and December 1995. The trial court held that the November-December 1995 lockdown did not excuse Smith's delay in filing his petition for post-conviction relief. The Illinois Appellate Court held that Smith's petition for post-conviction relief "may be considered untimely under the amended statute." (Answer, Ex. C at 3.)

Smith now argues the trial court's determination that the November-December 1995 lockdown did not excuse his delay was incorrect in light of cases in which lockdowns are excusable. However, "[t]he interpretation of what it means to show 'that the delay was not due to . . . culpable

-8-

negligence' is a matter of state law only, and [this Court] must accept the state court's answer." *Draper v. Page*, No. 99 C 6178, 2000 WL 876139, at *4 (N.D. Ill. June 29, 2000) (citing *Gilmore v. Taylor*, 508 U.S. 333 (1993)).

Smith's petition for post-conviction relief was not filed by December 14, 1995. Thus, Smith's petition for post-conviction relief was not "properly filed" under § 2244(d)(2) because it did not comply with the formal filing requirements of § 5/122-1, *see Artuz*, 531 U.S. at 8; *Smith*, 276 F.3d at 344; and the one-year limitations period was not tolled.

Smith's petition for leave to appeal his conviction and sentence was denied by the Illinois Supreme Court on October 5, 1995. Smith had an additional ninety days in which to seek a writ of *certiorari* from the United States Supreme Court, making his conviction final on January 6, 1996. *See Anderson v. Litscher*, 281 F.3d 672 (7th Cir. 2002). Smith was required to file his petition for writ of habeas corpus by January 6, 1997. Smith filed his habeas petition on August 28, 1998. Therefore, because Smith's petition for writ of habeas corpus was not filed within a year of the Illinois Supreme Court's denial of his direct appeal, his petition is untimely and, as such, is dismissed.[2]

---

[2] It should be noted that when the prior judge ruled that the petition for habeas corpus was timely filed, the record of prior proceedings which are presently before this Court were not then presented.

## CONCLUSION

For the reasons stated herein, Jesse Smith's Amended Petition for Writ of Habeas Corpus is dismissed as untimely.

**IT IS SO ORDERED.**

*[signature]*

John W. Darrah, Judge
United States District Court

Date: August 28, 2002