

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JESSE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No: 98 C 5450 |
| v. | ) | |
| | ) | |
| DEIRDRE BATTAGLIA, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court following remand on Petitioner's, Jesse Smith's,

Amended Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, against

Deirdre Battaglia[1], Warden of the Stateville Correctional Center in Joliet, Illinois, where Smith is

in custody. For the following reasons, Smith's *habeas* petition is denied.

## BACKGROUND

Jesse Smith was convicted of first-degree murder and three counts of attempted murder

on August 31, 1992, following a bench trial in the Circuit Court of Cook County. Smith was

sentenced to an extended term of eighty years of imprisonment for the first-degree murder

conviction and concurrent terms of thirty years' imprisonment for the attempted murder

convictions.

At Smith's trial, Jerome Wilson, an eyewitness, identified Smith and one of his co-

defendants as the shooters. Wilson testified that a little after midnight on February 2, 1991, he

---

[1] Deirdre Battaglia, the present custodian, is substituted as the proper named respondent
pursuant to Rule 2(a) of the Rules Governing Section 2254 in the United States District Courts.

and the murder victim, Charlotte Wilson, had left his apartment at 4525 South Federal to go to the victim's mother's house. *People v. Barnes*, No. 91 CR 11754, slip op. at 2 (Ill.App.Ct.1995). Wilson further testified that as he and Charlotte Wilson walked toward Federal Street through a well-lit breezeway, a person he identified as Smith approached them. *Id.* Wilson further testified that the man stopped at about thirteen feet away from Wilson and the victim and then, with his hand in his pocket so that the gun was not visible, shot the victim in the head. *Id.* After Wilson spoke to the shooter, the shooter removed his hood, took the gun out of his pocket, and shot Wilson in the left side. *Id.*

Wilson described the shooter as: "a tall, light-skinned, 25-year-old black man, with a wide nose, protruding lips, and a mustache, wearing all black clothing and a hood." Nothing in the record contradicts the accuracy of this description. The day after the murder, on February 3, 1991, police officers visited Wilson in the hospital; and Wilson identified Smith from a photographic array as the man who shot him and the victim. *Id.* at 4. Wilson also identified Smith as the shooter on three other occasions: two days after the shooting; in a lineup twenty-three days after the shooting; and in court. *Id.* at 6, 8.

At the bench trial, Smith was represented by Lawrence Vance, who made an opening statement as follows:

> Judge, we believe the evidence will show, as the State has shown the facts and the circumstances were in fact unfortunate. Several people were shot, in fact one was in fact killed, Judge. But I don't believe the evidence will show Jessie Smith was involved in this at all.
>
> I believe the evidence will show that Mr. Smith was not one of the offenders who was out on the scene. I believe further evidence will show that he was in fact home on the evening and he was home on that evening with his commonlaw [sic] wife who is a witness in this case.

-2-

We believe the evidence will show when the police arrested Jessie Smith the next day they first came to his wife and asked her where he was. She gave them a statement. She allowed them in the home and search warrant was not there [sic] and she gave them the statement. They later arrested Jessie Smith that day. He [gave] them a statement as to where he was, in spite of what the common law wife . . .

(Opening statement). The prosecution then objected, and the court overruled the objection. Vance then stated, "I'm sorry. We believe both accounts of where he was directly correspond with each other." (Opening statement). Vance never called Carol Brown (the "common-law wife") to testify, although, during trial, Brown was available to testify. Smith was convicted of first-degree murder and three counts of attempted murder.

At the conclusion of the bench trial, with the assistance of new counsel, Smith appealed his conviction and sentence to the Illinois Appellate Court, First District, arguing only: (1) that he was not proven guilty beyond a reasonable doubt and (2) that his sentence was excessive. On June 30, 1995, the Appellate Court affirmed Smith's conviction and sentence. *Barnes*, No. 91 CR 11754, slip op. at 1. Smith then filed a petition for leave to appeal the conviction and sentence to the Illinois Supreme Court, raising the same issues. On October 5, 1995, the Illinois Supreme Court denied Smith's petition for leave to appeal his conviction and sentence.

Smith then sought relief through the Illinois Post-Conviction Act, 725 ILCS 5/122-1 *et seq.* On January 12, 1996, Petitioner filed his *pro se* Petition for Post-Conviction Relief in the Circuit Court of Cook County. In it, Petitioner claimed that he had been denied his Sixth Amendment right to the effective assistance of both his trial and appellate counsel with regard to his alibi defense. Petitioner further argued that his rights were violated when he was not allowed to spend as much time in the prison library as he wanted due to prison lockdown.

On March 28, 1996, the Circuit Court of Cook County, Criminal Division denied this petition without an evidentiary hearing. The court noted:

> The [c]ourt finds that nowhere [sic] in Defendant's allegation of ineffective assistance of trial counsel, this issue was not raised on the direct appeal and therefore should be barred. An examination of Defendant's petition as well as the opinion affirming his conviction is clear that [Petitioner's] claim of ineffective assistance of trial counsel involved matter which could have been raised on direct appeal. The doctrine of waiver therefore applies.

The court further noted that Smith failed to provide an affidavit from Brown and "without any affidavit of Miss Brown, [Petitioner's] claim cannot be considered any further." With respect to the ineffective assistance of trial counsel, the court noted: "Petitioner also alleges that trial counsel's failure to call an alibi witness amounted to ineffective assistance of counsel. To support a claim . . . the Defendant must submit his affidavits from both individuals who would have testified. Absent such affidavits, the court cannot determine whether the witnesses could have provided any information or testimony favorable to the Defendant." With respect to Petitioner's claim that his appellate counsel was ineffective, the court noted: "Since this [c]ourt has found that the trial counsel's performance was not deficient in any way[,] the claim that appellate counsel failed to raise [issues on appeal] is without merit."

On March 29, 1996, Petitioner appealed the March 28, 1996 ruling. On May 29, 1996, on behalf of James Reddy (a Cook County Public Defender and Petitioner's post-conviction counsel), Cook County Public Defender Rita Fry, moved to withdraw, citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987) (there is no constitutional right to an attorney in state post-conviction proceedings).

The Appellate Court granted counsel's Motion to Withdraw and affirmed the Order of

the Circuit Court denying Smith's petition, stating, in relevant part:

> The scope of post-conviction review is limited by the doctrines of *res judicata*
> and waiver[,] which affect all claims actually presented in the direct appeal as
> well as those which could have been, but were not. Defendant's assertions of
> ineffective assistance of trial counsel and the trial court's prejudice are foreclosed
> under these principles, and defendant's remaining allegations were either refuted
> by the record or insufficient to require further proceedings under the Act. In
> addition, defendant's petition may be considered untimely under the amended
> statute, and the shortcomings of his post-petition appellate counsel do not present
> a basis for granting the relief sought."

*Illinois v. Smith*, 91 CR 1754, slip op. at 3 (Ill. App. Ct. Nov. 14, 1996).

On August 28, 1998, Smith filed a *pro se* Petition for Writ of *Habeas Corpus* in the

United States District Court for the Northern District of Illinois. This petition asserted three

grounds for relief: two claims of ineffectiveness of counsel and one Fourteenth Amendment

claim for insufficient access to the prison library. In a minute order dated November 25, 1998,

United States District Court Judge Bucklo ruled that Smith's petition was timely. On

July 27, 1999, Judge Bucklo ordered the State and Smith to file copies of Smith's petition to the

Illinois Supreme Court appealing the denial of post-conviction relief. That order noted that

district courts are precluded from considering claims that prisoners have not appealed to the

Illinois Supreme Court citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). On August 11, 1999,

Judge Bucklo held that Smith had not waived the claims of ineffective assistance of counsel and

the existence of the alibi defense by failing to include them in his petition to the Illinois Supreme

Court and appointed the Federal Defender Program to represent Smith on these claims.

The case was then reassigned to this Court by an order of the Executive Committee dated September 5, 2000. With the assistance of court-appointed counsel, Smith filed an Amended Petition for a Writ of *Habeas Corpus* on June 12, 2001. This amended petition made three claims: (1) Petitioner's trial counsel was ineffective for failing to call an alibi witness and present an alibi defense, (2) Petitioner's appellate counsel was ineffective for failing to raise the issue of ineffectiveness of trial counsel claim on direct appeal, and (3) the Circuit Court of Cook County erred when it denied Smith's Petition for Post-Conviction Relief without holding a hearing. In a Memorandum Opinion and Order dated August 14, 2001, this Court granted Smith an evidentiary hearing regarding his ineffective assistance of counsel claims. Respondent filed a renewed motion for reconsideration, raising the issues that the petition for writ of *habeas corpus* was untimely and/or procedurally barred. That motion was denied without prejudice with leave to assert those grounds at a later time.

An evidentiary hearing regarding Smith's ineffective assistance of counsel claims was held on May 1, 2002. At the evidentiary hearing, the alleged alibi witness, Carol Brown, gave the following testimony: Brown discussed with Vance (Petitioner's trial counsel) that she would be called as a defense witness at trial. She also told Vance that Smith was with her on the night of the crimes. Brown was present at the trial, but Vance told her that she did not need to testify. If Brown had been called at trial, she stated that she would have testified that, at the time of the crimes, Petitioner was at home with her and her two children.

Current counsel for Smith intended to call Vance as a witness at the evidentiary hearing; however, Vance did not appear, despite having been subpoenaed. The parties stipulated that Vance would have testified only that: (1) he is an attorney at law, (2) he represented Smith

throughout the trial for the offense of murder and attempted murder, (3) Brown was not called to testify on behalf of Petitioner at trial, and (4) Vance does not remember why he did not call Brown as a witness. Therefore, the evidentiary hearing only established that Ms. Brown was available to testify favorably for Smith at trial but shed no light on the reason for Vance's decision not to call her. After the hearing, the state moved to dismiss Smith's petition as time-barred. The parties were directed to submit written briefs in support of and contesting the Petition for a Writ of *Habeas Corpus*. On August 28, 2002, the Court dismissed Smith's amended petition as untimely under 28 U.S.C. § 2244(d)(1). Petitioner's Motion to Reconsider was denied on December 12, 2002. The Court found that Smith's petition was not "properly filed" under *Artuz v. Bennett,* 531 U.S. 4 (2000), and, therefore, could not toll the one-year statute of limitations under 28 U.S.C. § 2244(d)(2).

Petitioner appealed the August 28, 2002 ruling to the Seventh Circuit Court of Appeals. On July 13, 2005, the Seventh Circuit held that the petition was timely based upon the Illinois Appellate Court's inconclusive language concerning the question of the timeliness of petitioner's post-conviction petition. *Smith v. Battaglia,* 415 F.3d 649, 653 (7th Cir. 2005). The Seventh Circuit did not reach the Respondent's procedural default and merits arguments; instead, the court remanded the case to this Court for further proceedings. The Seventh Circuit noted that the Respondent argued that Smith faced another procedural bar with respect to his claim of ineffective assistance of counsel because the appellate court found that he waived that argument on appeal. However, the court stated: "It is possible, however, that Smith may be able to overcome this procedural default, because he has also consistently argued that his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel. If appellate

-7-

counsel was ineffective in this way, it may provide cause for Smith's failure to attack his trial counsel's performance on direct appeal." *Smith v. Battaglia,* 415 F.3d 649, 653 (7th Cir. 2005). However, the Seventh Circuit did not reach any conclusion, holding that this argument "will need to be explored further on appeal." *Smith v. Battaglia,* 415 F.3d 649, 653 (7th Cir. 2005).

## LEGAL STANDARD

Under 28 U.S.C. § 2254(d), a writ of *habeas corpus* of a person in custody pursuant to a state court judgment will only be granted if the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"To prevail on his ineffective assistance of counsel claim, [a petitioner] must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness and (2) caused his prejudice." *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) (*Murrell*), *citing Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). As long as the state court properly identified and applied this legal standard, a petitioner's ineffective assistance of counsel claim may only be granted if the state court unreasonably applied this standard to the facts of the case. *Murrell*, 332 F.3d at 1111. This bar is a high standard, as the state court must make a clear error. *Murrell*, 332 F.3d at 1111. If the state court "took the constitutional standard seriously and produced an answer within the range of defensible positions," then Petitioner's claim must be denied. *Murrell*, 332 F.3d at 1111 (citation omitted). All factual determinations, including credibility decisions, are presumed correct unless rebutted with clear and convincing evidence.

-8-

28 U.S.C. § 2254(e)(1); *Murrell*, 332 F.3d at 1112. A trial court's and appellate court's factual determinations are entitled to deference. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Murrell*, 332 F.3d at 1112.

## ANALYSIS

A petitioner seeking *habeas corpus* relief is required to survive procedural default prior to any examination of the petition's merits. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) *(Coleman)*. A petitioner may seek federal *habeas* review only if he has exhausted all available state court remedies and, in the course of those proceedings, fully and fairly presented his constitutional claims to the state courts. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). *See Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Here, the Respondent argues that Smith's claim of ineffective assistance of trial and appellate counsel are procedurally defaulted because the state court declined to consider the issue on the basis that it had been forfeited by Smith's failure to raise it on direct appeal.

Smith seeks to overcome procedural default. A petitioner may seek to overcome procedural default by showing of cause for the default and actual prejudice resulting therefrom. *Gray v. Netherland*, 518 U.S. 152, 161-66 (1996). Specifically, Smith asserts that he has overcome procedural default because he has consistently argued that his appellate counsel was ineffective for failure to raise the ineffectiveness of trial counsel; and, thus, this provides cause for his failure to attack his trial counsel's performance on direct appeal. "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Lee v. Davis,* 328 F.3d 896, 900 (7th Cir. 2003) *(Lee)*, *quoting Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir.1999).

"The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (*Winters*); *Williams v. Parke*, 133 F.3d 971, 974 (7th Cir.1997)." *Lee,* 328 F.3d at 900-01. Smith's appellate counsel made two arguments on direct appeal: (1) that he was not proven guilty beyond a reasonable doubt and (2) that his sentence was excessive. There is not a reasonable probability that raising the ineffective assistance of trial counsel on direct appeal would have altered the outcome because, as detailed below, the trial counsel's performance was not objectively unreasonable.

To make a showing that Smith's trial counsel was ineffective, Smith would have to demonstrate: (1) that his trial counsel's performance was so deficient as to fall below an objective standard of reasonableness under "prevailing professional norms"; and (2) that the deficient performance so prejudiced the defense as to deny the defendant a fair trial. *Lee,* 328 F.3d at 900, *citing Strickland*, 466 U.S. at 687-88. Trial counsel's performance is viewed deferentially, "with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation," so there is a strong presumption that counsel rendered reasonably effective assistance. *Woods v. McBride*, 430 F.3d 813, 821 (7th Cir. 2005) (*Woods*), *citing Ashford v. Gilmore*, 167 F.3d 1130, 1134 (7thCir. 1999).

-10-

The failure to prepare an alibi defense can, under certain circumstances, rise to the level of objective unreasonableness. Recently, in *Raygoza v. Hulick*, – F.3d –, 2007 WL 184635 (7th Cir. Jan. 25, 2007) *(Raygoza)*, the Seventh Circuit held that defense counsel's failure to investigate the alibi defense of his client, a defendant charged with first-degree murder, and failure to call any of defendant's alibi witnesses was legally deficient. In *Raygoza,* ten alibi witnesses, both related and unrelated to the defendant, offered consistent statements that defendant was at his mother's birthday party on the night and at the time of the murder. The defendant's attorney failed to either investigate the merit of these statements or call any of these people as witnesses at trial. The ten alibi witnesses' names were in the police report, and the defendant's attorney presented no credible reason for not calling them as witnesses at trial. The guilty verdict was based in large part based on defendant's lack of evidence supporting his alibi. Under these circumstances, the Seventh Circuit held that the lawyer's failures resulted in a performance that did not meet the standard guaranteed by the Sixth Amendment. The court noted that in a first-degree murder trial, "it is almost impossible to see why a lawyer would not at least have investigated the alibi witnesses more thoroughly." *Raygoza*, 2007 WL 184635 at *3.

This case is significantly different. As the *Raygoza* court noted, "It is counsel's performance as a whole that matters." *Raygoza*, 2007 WL 184635 at *5. Here, based on the trial transcript referred to above, it cannot be said that there was no credible reason by trial counsel for declining to call the purported alibi witness to testify. There was apparently an issue as to whether there would be a conflict between the testimony of Smith and that of his commonlaw wife, Brown. Smith's trial counsel, Vance, stated in the opening statement, "[Smith] gave [the police] a statement and account of where he was *inspite* [sic] *of what the commonlaw wife . . .*"

-11-

(Trial Transcript) (emphasis added). Vance did not finish the sentence because he was
interrupted by the prosecutor's objection; to which, Vance responded, "We believe *both
accounts* of where he was directly correspond with each other." (Trial Transcript) (emphasis
added). The record arguably reflects that by calling Ms. Brown, the defense counsel might have
occasioned introduction of evidence damaging to the defense. The evidence presented at the
hearing on this issue before this Court established nothing to the contrary. Smith must show
more than his trial counsel made a now unexplained decision; he must demonstrate that
counsel's performance at the time of trial was so inadequate that he could not reasonably be said
to have functioned as "counsel" in the manner required by the Sixth Amendment. *Woods*, 430
F.3d at 813, *citing Edmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). Here, Smith cannot
meet this burden.

Thus, because it has not been shown that trial counsel's assistance was objectively
unreasonable, neither was appellate counsel's. Smith's ineffective-assistance-of-appellate-
counsel claim is procedurally defaulted and may serve neither as an independent reason for
*habeas* relief nor as an excuse for petitioner's procedural default of his trial counsel claim. *See
Edwards v. Carpenter*, 529 U.S. 446, 451-452 (2000); *Lemons v. O'Sullivan*, 54 F.3d 357,
360-61 (7th Cir.), *cert. denied*, 516 U.S. 993 (1995) (claim of ineffective assistance of appellate
counsel must itself be raised and appealed through the state courts before it may be raised in
federal court).

Further, Smith has not shown that his appellate counsel's failure to raise the ineffective
assistance of trial counsel so prejudiced him so as to deny him a fair trial. At the appellate level,
"[p]rejudice is established if the issue not raised 'may have resulted in a reversal of the

-12-

conviction or an order for a new trial.'" *Winters*, 274 F.3d at 1167. This means there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee*, 328 F.3d at 901. A determination of prejudice at the appellate level must consider the strength of the claimed trial counsel's ineffective conduct; Smith cannot show that he was prejudiced by his trial counsel's failure to call the alibi witness. If Ms. Brown had been called by the defense to testify at trial, the state court judge, as finder of fact, would have weighed the testimony of the eyewitness against the testimony of Ms. Brown, who, at the time of the shooting, was: (a) in a relationship with Smith, (b) had children with Smith, and (c) lived with Smith. Considering her interest or bias in testifying in favor of Smith, it cannot be said her testimony would not have been given greater weight than the positive identification in court of Smith by the surviving victim. Further, this occurrence identification was corroborated by his four subsequent identifications of Smith and an apparently accurate and unimpeached post-occurrence description of Smith as the shooter.

## CONCLUSION

For the foregoing reasons, Smith's *habeas* petition is denied.

Date: *March 1, 2007*

JOHN W. DARRAH
United States District Court Judge

-13-